## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM,<br><br>vs.<br><br>**CHRIS JUNIOR ANDERSON TEDTAOTAO,**<br><br>Defendant. | CRIMINAL CASE NO. **CF0316-25**<br><br>**DECISION AND ORDER** |

### INTRODUCTION

This matter came before the Honorable Vernon P. Perez on August 14, 2025, for hearing on Defendant **CHRIS JUNIOR ANDERSON TEDTAOTAO's** ("Defendant") Motion to Suppress. Present were Assistant Attorney General Dante CH Harootunian on behalf of the People of Guam ("the Government") and Defendant with counsel, Thomas J. Fisher. Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order.

### BACKGROUND

On May 16, 2025, Defendant was indicted with the following charges: (1) Possession of a Concealed Firearm (As a Third Degree Felony); (2) Possession of a Firearm without a Firearms Identification Card (As a Third Degree Felony); (3) Possession of a Schedule II Controlled Substance (As a Third Degree Felony); (4) Theft by Receiving Stolen Firearm (As a Third Degree Felony); (5) Impersonating a Police Officer (As a Misdemeanor); (6) Eluding a Police Officer (As a Misdemeanor); and (7) Display of Blue Lights (As a Violation). (Indictment, May 16,

2025). On May 22, 2025, at Arraignment, Defendant asserted his right to a speedy trial. On June 24, 2025, Defendant waived his right to a speedy trial. Defendant subsequently re-asserted his right to a speedy trial on July 22, 2025.

On July 24, 2025, Defendant filed the instant Motion. Defendant moves the Court to suppress all evidence in this matter because the Guam Police Department ("GPD") did not have any reasonable suspicion to effectuate a traffic stop, citing *People v. Mansapit*, 2016 Guam 30. *See generally,* Mot. Suppress, Jul. 24, 2025.

On August 6, 2025, the Government filed its Opposition.

On August 14, 2025, the Court heard sworn testimony from GPD Officer Eugenius K. Pewtress and Detective Joe G. Nucum. After hearing brief arguments from the parties, the Court placed the matter under advisement.

The Court ascertained the following facts from witness testimony:

1. An anonymous user posted on a Facebook group, Guam Crime Watch Community Accountability and Transparency, a photograph of the back of a White Chevrolet Tahoe with the license plate MZ7200. The post indicated the vehicle had blue lights and appeared to be pulling people over. The post questioned if the Tahoe was an unmarked police vehicle.

2. Officer Pewtress and other officers saw the social media post on May 1, 2025.

3. After seeing the post, Officer Pewtress recalled that he and Detective Nucum had spoken to a confidential informant regarding an unrelated case some days prior who had mentioned that he or she had a friend from Afame Road in Sinajana who was pulling people over with blue lights. Detective Nucum testified that the CI told him the friend was Chris Tedtaotao who stayed in Afame next to an illegal drug trafficking house.

4. Officer Pewtress ran the license plate on the DMV database. The license plate belonged to a 2013 Chevrolet Tahoe and was registered to Cathy Nakamura Cruz. Upon further research, Officer Pewtress learned that Ms. Cruz was the

significant other of Defendant. Officer Pewtress also discovered that the vehicle's insurance expired in October 2024.

5. The first time Officer Pewtress saw the vehicle in person was on May 8, 2025 in the early afternoon. Officer Pewtress saw the vehicle at the listed address of the registered owner in Afame, Sinajana. The vehicle was not moving or in the roadway at that time.

6. Officer Pewtress testified that the vehicle appeared unattended as it was parked at the listed address. Officer Pewtress could not see if there were any occupants in the vehicle as the car was very well tinted (dark).

7. Officer Pewtress testified that he and Detective Nucum were in the area because they were doing a drive by making checks of other houses for drug trafficking. Officer Pewtress testified that they were not specifically there to check the residence where the Tahoe was located.

8. Later that afternoon around 3:00 p.m., Officer Pewtress and Detective Nucum observed the vehicle parked at MJ Market off Route 4 in Chalan Pago. Officer Pewtress and Detective Nucum were in an unmarked police vehicle, also a white Chevrolet Tahoe. Detective Nucum was driving.

9. Officer Pewtress testified that he and Detective Nucum were just motoring and happened to see the vehicle. Officer Pewtress did not see the Tahoe driving on the road prior to seeing it at the parking lot of MJ Market. The front of the vehicle was facing in towards MJ Market.

10. Detective Nucum parked their unmarked patrol vehicle at the entrance of Naki Street. Officer Pewtress and Detective Nucum observed that the vehicle did not have a front license plate attached when it motored out of the store area onto Route 4. Officer Pewtress confirmed on that day that the insurance for the vehicle was still expired.

11. After the Tahoe left MJ Market, it made a right turn southbound on Route 4.

12. The Tahoe traveled along Route 4 and entered the parking lot of another store – Chalan Pago Familia Mart. The Tahoe was in the process of reverse parking when Officer Pewtress and Detective Nucum approached the vehicle at an angle.

13. Detective Nucum activated the lights and sirens to effectuate a traffic stop. Instead of stopping, however, the operator looked towards their direction and accelerated out of the parking lot with a high rate of speed. Officer Pewtress observed a male individual with a hat operating the car.

14. Officer Pewtress and Detective Nucum continued to follow and monitor the Tahoe with lights and sirens activated.

15. The operator drove in a reckless manner making unsafe lane changes, surpassing the flow of traffic, driving at a high speed, and not using turn signals.

16. When they approached the Route 10 traffic intersection, the operator went to the far-right lanes, bypassed stopped traffic on the left turn lanes, and ran the red light making a left turn onto Route 10.

17. The operator continued eluding at a high rate of speed, traveling in the center lane at times. Officer Pewtress testified dust could be seen flowing up in the air.

18. As Officer Pewtress and Detective Nucum followed the Tahoe, the operator continued to surpass the flow of traffic at a high rate of speed. When they approached the intersection of Route 10 and UOG drive in Mangilao, the traffic light was red, and the operator went to the center lane to bypass stopped traffic. Officer Pewtress observed an individual running across the street to avoid getting hit.

24. Officer Pewtress and Detective Nucum continued to follow the Tahoe. As the vehicle approached the intersection of Route 10 and Corten Torres Street Mangilao, the operator ran another red light and continued to surpass the flow of traffic conducting unsafe lane changes. At the next intersection (Route 10 and Dairy Road in Mangilao), the traffic light was also red, and the Tahoe made a left turn onto Dairy Road. The operator continued to travel at a high rate of speed on Dairy Road before making an

abrupt right turn onto Blas Street in Barrigada and then an abrupt right turn onto Leyang Road in Barrigada.

28. Officer Pewtress and Detective Nucum continued to follow the Tahoe at a high rate of speed. The operator made a left turn back onto Route 10 in Barrigada and motored northbound towards the tri-intersection.

29. As they approached the tri-intersection, Officer Pewtress observed that traffic was built up. Detective Lucius also joined in the chase in another vehicle with lights and sirens activated.

30. The Tahoe changed from the center lane to the inner lane, went to the right lane, and eventually made a right turn onto Route 16.

31. Officer Pewtress observed the Tahoe motoring at a slower rate of speed. The driver's window was rolled down and he could see the operator holding a cell phone crying.

32. The officers continued to follow the Tahoe. The Tahoe still did not stop but eventually Detective Lucius was able to somewhat cut off the front left side of the Tahoe and the operator made a right turn into a gravel road near Happy Mart and the Lumpia House and finally stopped.

33. Officer Pewtress, Detective Nucum, and Detective Lucius approached the vehicle with their firearms drawn.

34. Detective Nucum and Lucius met with Defendant.

35. Detective Nucum approached the driver's side and observed the Defendant holding his cell phone on a video call.

36. Defendant was instructed to open the door, however he did not comply. Detective Nucum reached into the car and unlocked the door, extracted Defendant and placed him in hand restraints.

37. Officer Pewtress tried to open the rear driver's side door and could not see inside due to the dark tint. Officer Pewtress entered through the driver's side door to sweep the car for other occupants and weapons. Officer Pewtress did not find any other

occupants but observed a clear glass pipe with a bulbous end with suspected methamphetamine.

38. Officer Pewtress conducted a further search of the vehicle with Detective Nucum and found more suspected methamphetamine in the rear of the vehicle, a scale and other suspected methamphetamine in the center console. A firearm was also found under the front passenger seat.

39. Defendant was escorted to the patrol car. A search of his person was conducted. Defendant was arrested and transported to the precinct.

40. Detective Nucum testified that a license plate was later discovered in the front of the Tahoe on the dashboard. Detective Nucum testified that the license plate on the dashboard was not visible when he looked at the car.

41. GPD was unable to identify who the anonymous user on the Facebook post was. Officer Pewtress acknowledged that it could be possible that the post contained false information, however, he testified that he believed it was truthful based on the context of the Facebook group it was posted in (people posting things they were concerned about in the community).

42. Defendant was on probation at the time of this incident.

## DISCUSSION

The issue before the Court is whether or not GPD had reasonable suspicion to conduct a traffic stop.

The Fourth Amendment to the U.S. Constitution "protects against unreasonable searches and seizures and is made applicable to Guam via section 1421(b)(c) of the Organic Act of Guam." *People v. Chargualaf*, 2001 Guam 1 ¶ 14 (internal citations omitted). Brief investigative detentions are permitted under the Fourth Amendment "when a police officer has reasonable suspicion that an individual was engaged in or is about to be engaged in illegal conduct." *People v. Johnson*, 1997 Guam 9 ¶ 4 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). "As a general matter, the decision to stop an automobile without a warrant is reasonable where the police have probable cause to believe that a traffic violation has occurred. Further, it is reasonable to stop a car where

the police merely have a reasonable suspicion to believe the driver has committed a traffic violation." *Chargualaf*, 2001 Guam 1 ¶ 17 (citations omitted). "In order to determine whether an officer had reasonable suspicion sufficient to warrant a traffic stop, the court must look at the totality of the circumstances, taking into account the facts known to the officers from personal observation." *Johnson*, 1997 Guam 9 ¶ 6 (citation and quotation marks omitted). Furthermore, the reasonable suspicion must exist at the time the stop was initiated. *Id.* (citation omitted). Reasonable suspicion requires "'some minimal level of objective justification' for making a stop, but considerably less than the level of suspicion required for probable cause." *Mansapit*, 2016 Guam 30 ¶ 13 (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)).

Under Guam law:

(a) **The license plates issued for all vehicles required to be registered under [Title 16] shall be attached to the front and rear thereof** and shall not be covered with plastic or other coverings if thereby the license numbers and letters are not clearly visible.

(b) **Every license plate shall at all times be securely fastened to the vehicle for which it is issued** so as to prevent the plate from swinging, and at a minimum distance of twelve (12) inches from the ground in a position to be clearly visible. Every license plate shall be maintained free from foreign materials and in a condition to be clearly legible.

(c) **Every license plate shall remain attached during the period of its validity to the vehicle for which it is issued except as otherwise permitted by law** with reference to special plates issued to a dealer or distributor, and except plates issued for vehicles which are exempt from payment of registration fees, or plates which bear other distinguishing marks or symbols when such vehicles are no longer exempt from payment of registration fees, or no longer entitled to plates bearing distinguishing marks or symbols. This Subsection shall not apply to plates which the Department of Revenue and Taxation as authorized has ordered to be surrendered, transferred to another vehicle or removed.

\* \* \*

16 G.C.A. § 7129 (a)-(c) (emphasis added). "Any person who operates a motor vehicle in Guam and does not possess the insurance mandated by Sections 19102 and 19104, shall be subject to a mandatory fine of $500. Said fine shall be imposed by the Traffic Division of the Superior Court

of Guam." 16 G.C.A. § 19106(b). Section 19102 provides that "[e]ach owner of a motor vehicle which is required to be registered in Guam shall maintain the insurance required by [16 GCA Chapter 19]. This insurance shall be in effect continuously during the motor vehicle's period of registration." 16 G.C.A. § 19102. Section 19104 provides that "[a]ny motor vehicle which is operated in Guam must be insured pursuant to [specific] limits." 16 G.C.A. § 19104.

The Court finds that Officer Pewtress and Detective Nucum had reasonable suspicion that Defendant committed traffic violations when they attempted to effectuate a traffic stop at Familia Mart in Chalan Pago. Defendant was driving a vehicle without valid insurance, a violation of 16 GCA §§ 19102 and 19104, and did not have a visible license plate fixed to the front of his vehicle, a violation of 16 GCA § 7129. Although Detective Pangelinan testified that a license plate was later discovered in the front dashboard of the vehicle, the license plate was not visible from the front of the car and clearly was not attached as required by the statute. While the Facebook post may have flagged GPD's interest in the vehicle, Officer Pewtress and Detective Nucum ultimately attempted to effectuate a traffic stop after identifying the vehicle and observing these specific traffic violations. *See Chargualaf*, 2001 Guam 1 ¶ 17. Further, the lawfulness of a traffic stop does not depend on the subjective motivations of the police officer. *See Whren v. United States*, 517 U.S. 806, 813 (1996); *United States v. Taylor*, 596 F.3d 373, 378 (7th Cir. 2010) ("the subjective motivations of the agents are irrelevant to the Fourth Amendment analysis."). Defendant then committed additional traffic violations as he attempted to elude the police officers by speeding, conducting unsafe lane changes, driving in the middle of the road, and running red lights. Therefore, the Court DENIES Defendant's Motion to Suppress.

//

//

//

//

//

//

//

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Motion to Suppress. As this matter remains in an asserted status, the Court hereby sets Jury Selection and Trial for September 12, 2025 at 1:30 p.m. Parties shall return for a Pre-Trial Conference on September 10, 2025 at 9:00 a.m.

IT IS SO ORDERED this 5th day of September, 2025.

HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:
Ab, Fisher

09|05|25    2:08 pm
Date    Time
*Kristin M. Reyes*
Deputy Clerk, Superior Court of Guam

*People v. Tedtaotao*
Case No. CF0316-25
Decision and Order